IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
: CHAPTER 13
MICHAEL B. STAMBAUGH, :
: CASE NO. 1-12-bk-07007 RNO
Debtor :
************************************************************************
MICHAEL B. STAMBAUGH, :
:
Plaintiff :
:
v. :
:
PNC BANK, N.A., :
:
Defendant : ADVERSARY NO. 1-13-ap-000233 RNO

## OPINION[1]

This is a Motion for Summary Judgment filed by the Chapter 13 Debtor/Plaintiff. The Debtor seeks a determination as to the lien priority position of four mortgages held by the Defendant/Bank. For the reasons stated below, the Motion for Summary Judgment is granted.

**I. Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K).

**II. Facts and Procedural History**

A voluntary petition under Chapter 13 of the Bankruptcy Code was filed on December 7, 2012, by Michael B. Stambaugh ("Debtor"). Schedule A - Real Property shows the Debtor owns real property known as 5878 River Drive, York, Pennsylvania ("Real Estate"). The schedule values the Real Estate at $200,000.00.

---

[1] Drafted with the assistance of William J. Schumacher, Law Clerk.

The Debtor commenced this Adversary Proceeding on October 1, 2013, by filing a Complaint to Determine Priority Among Mortgages Upon Debtor's Real Estate. October 1, 2013, ECF No. 1. It is noted that the Complaint names Charles DeHart, III, Chapter 13 Trustee, as a Defendant. However, the Chapter 13 Trustee has not filed any response to this Adversary Proceeding and I find that the true gravamen of the Complaint is addressed to the Defendant, PNC Bank, N.A.

The pleadings establish that PNC Bank, N.A. is the successor in interest to National City Mortgage. They also indicate that one of the divisions of PNC Bank, N.A. is known as PNC Mortgage. (Defendant, PNC Bank, N.A., in all those forms, is hereafter referred to as "PNC".)

The pleadings show that PNC is the holder of four mortgages against the Real Estate in the following principal face amounts:

    a.    $31,750.00 Mortgage

    b.    $175,000.00 Mortgage

    c.    $225,050.00 Mortgage

    d.    $63,950.00 Mortgage

The principal point of contention in this Adversary Proceeding is the proper prioritization of the above mortgages (collectively, "Mortgages").

**III.    Discussion**

    **A.    Standard to Decide a Motion for Summary Judgment Under Federal Rule of Bankruptcy Procedure 7056**

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56 and makes it applicable to bankruptcy proceedings. Pursuant to Rule 56, the court shall grant summary judgment to the moving party "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An issue of material fact is genuine if a reasonable fact-finder could return a verdict for the nonmoving party on the question. *In re Big Sky Farms, Inc., ex rel. v. Ernst & Young, Inc.*, 512 B.R. 212, 215 (Bankr. N.D.Iowa 2014). The movant has the burden to prove the absence of genuine issues of material fact. *In re Madera*, 363 B.R. 718, 724 (Bankr . E.D.Pa. 2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the court must view the facts in the light most favorable to the nonmoving party and draw all inferences in favor of that party. *In re Shull*, 493 B.R. 453, 455 (Bankr. M.D.Pa. 2013) (internal citations omitted). The absence of any genuine issue of material fact may be demonstrated by the pleadings, supporting affidavits, and discovery materials - such as depositions, answers to interrogatories, and admissions which are part of the record. *In re Premium Motor Cars, Inc.*, 404 B.R. 128, 130 (Bankr. W.D.Pa. 2009).

### B. **PNC's Pleading of Equitable Subrogation**

The Complaint, in part, seeks a determination that the $175,000.00 Mortgage is in a first position against the Real Estate. It also asks the Court to establish the priorities of all the Mortgages.

PNC's Answer to the Complaint includes a counterclaim which pleads the doctrine of equitable subrogation. PNC alleges that under the doctrine of equitable subrogation, the mortgage in the face amount of $225,050.00 should be determined to be in a first lien position against the Real Estate. PNC also asserts that a Subordination Agreement elevated the $225,050.00 Mortgage to a first position. Finally, PNC raises alleged misconduct by the Debtor

3

Case 1:13-ap-00233-RNO    Doc 46    Filed 03/03/15    Entered 03/03/15 10:01:42    Desc
INCORRECT IMAGE    Page 3 of 11

in the making of the loans secured by the Mortgages.

Generally, subrogation involves one creditor being put in the place of another; it is sometimes thought of as substitution. *In re Estate of Devoe*, 74 A.3d 264, 267 (Pa.Super. 2013).

PNC has not asserted any right to contractual subrogation; nor has PNC identified a statutory basis for a claim of subrogation, such as § 509 of the Bankruptcy Code[2]. I view § 509 as generally providing a right of subrogation to a co-debtor who satisfies the bankruptcy debtor's obligation by paying the creditor. The payor/co-debtor is then subrogated to the rights of the creditor to the extent of the payment. It has been noted that, "the legislative history to § 509 indicates that it was designed to describe rights available to a limited class of creditors, namely, true co-debtors who have actually paid a debtor's obligation to the third party in question." *In re Hamada*, 291 F.3d 645, 650 (9th Cir. 2002) (holding that the issuer of a letter of credit, with a direct primary obligation, was not entitled to subrogation under § 509).

PNC's Brief in Opposition to Debtor's Motion for Summary Judgment cites Pennsylvania case law - ostensibly supporting its claim that the doctrine of equitable subrogation entitles it to certain relief - namely, placing the $225,050.00 Mortgage in a first lien position. PNC argues that the $225,050.00 Mortgage was intended, in part, to pay off the $175,000.00 Mortgage.

PNC alleges that Debtor knew of the bank's intention to satisfy the $175,000.00 Mortgage, but that he took ". . . advantage of the error by drawing on the $175,000 Loan, up to the full amount of the credit available." Answer and Counterclaim of Defendant/Counterclaim

---

[2] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

4

Plaintiff PNC Bank, N.A., ¶ 16, December 17, 2013, ECF No. 11.

I note that equitable subrogation, a state law doctrine, is an available remedy in bankruptcy courts. *In re Houston*, 409 B.R. 799, 808 (Bankr. D.S.C. 2009); *also see Vieira v. Pearce (In re Pearce)*, 236 B.R. 261, 264 (Bankr. S.D.Ill. 1999).

The Pennsylvania Superior Court considered the doctrine of equitable subrogation in a mortgage foreclosure action in *First Cmlth. Bank v. Heller*, 863 A.2d 1153, 1156 (Pa.Super. 2004). The Superior Court noted that, generally, the priority of a lien is determined by the date on which it was recorded. *Heller*, 863 A.2d at 1156; *also see* 42 Pa.C.S.A. § 8141 and 21 P.S. § 622.

The court in *Heller* noted that equitable subrogation is a widely recognized exception to the "first in time" rule. *Heller*, 863 A.2d at 1156. The *Heller* court recites the four criteria which must be met for equitable subrogation to apply:

>  (1) the claimant paid the creditor to protect his own interests;
>  (2) the claimant did not act as a volunteer;
>  (3) the claimant was not primarily liable for the debt; and
>  (4) allowing subrogation will not cause injustice to the rights of others.

*Id.*, at 1158. Ultimately, the court in *Heller* found that the appellant, Ameriquest Mortgage Company, did not qualify for equitable subrogation. It noted that Ameriquest was seeking to be subrogated to earlier mortgage positions which its title search "did not reveal." The Superior Court held that the appellant's interest remained subordinate to the foreclosing appellee and quashed the appeal.

The Pennsylvania Superior Court again enunciated the four requirements for the doctrine of equitable subrogation in the case of *1313466 Ontario, Inc. v. Carr*, 954 A.2d 1, 4 (Pa.Super.

5

2008). Again, the first of those elements is: (1) the claimant paid the creditor to protect his own interests. *1313466 Ontario, Inc.*, 954 A.2d at 4. The Superior Court also quoted Pennsylvania law that "the courts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care has been exercised." *Id.* at 5 (internal citations omitted). The court noted that its decision to quash the appeal was supported by the fact that any loss incurred by the appellant, U.S. Bank National Association, was due to its own carelessness.

In the instant case, I conclude that the doctrine of equitable subrogation is similarly not available to PNC. It was PNC - including its predecessor, National City Mortgage - which made each and all of the four loans to the Debtor. It was within PNC's control to see that the $175,000.00 Mortgage was paid off and satisfied of record when the $225,050.00 Mortgage closed. Failure to effect such satisfaction may give PNC a claim against a third party, for example, a closing agent - it does not allow for the invocation of the equitable subrogation doctrine. Also, PNC has not asserted that it made payment to a different creditor of the Debtor. I conclude that in these circumstances, the doctrine of equitable subrogation is not furthered by reordering the priority of liens.

### C. Subordination Agreement

PNC also opposes the Motion for Summary Judgment based upon the terms of an August 26, 2011, Mortgage Subordination Agreement. A copy of that two-page agreement is attached hereto as Exhibit "A" ("Subordination Agreement").

The Subordination Agreement has two parties, PNC Bank, N.A., as successor by merger to National City Bank, and PNC Mortgage, a division of PNC Bank, N.A. In opposing the

6

Motion for Summary Judgment, PNC has stated, "[t]o protect its interests, PNC recorded a Subordination Agreement on September 20, 2011. At the time it recorded the Subordination Agreement, it was PNC's intention to place the $225,050 Loan in first-lien position." Answer and Counterclaim of Defendant/Counterclaim Plaintiff PNC Bank, N.A., ¶ 18, December 17, 2013, ECF No. 11.

From the available record, the following time line is helpful in determining the intention of the parties concerning the Subordination Agreement.

| Face Amount of Loan | Mortgage Date |
| --- | --- |
| $31,750.00 | August 22, 2003 |
| $175,000.00 | September 26, 2005 |
| $225,050.00 | April 13, 2006 |
| $63,950.00 | April 13, 2006 |

The Subordination Agreement was dated August 26, 2011, and recorded on September 20, 2011. Thus, it was entered into nearly six years after the $175,000.00 Mortgage, and more than five years after the $225,050.00 Mortgage.

Section 510(a) of the Bankruptcy Code provides, "a subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law." Pennsylvania, and virtually all other states, allow for subordination by agreement. *In re Mihalko*, 87 B.R. 357, 364 (Bankr. E.D.Pa. 1988).

Pennsylvania courts have applied general contract interpretation principles when construing subordination agreements. Those principles include:

7

1. Contracts should be interpreted to give effect to the intent of the parties at the time the contract was entered into.
2. When the language of a contract is clear and unambiguous, the parties' intent should be determined from the express language of the agreement.

*Conshohocken Federal Sav. and Loan Ass'n v. Period and Country Homes, Inc.*, 430 A.2d 1173, 1177 (Pa.Super. 1981) (affirming trial court order not allowing appellant to nullify its subordination agreement and restore the priority of its purchase money mortgages).

Where its language is plain and unambiguous, the terms of a subordination agreement are fully enforceable in a bankruptcy case. *In re Curtis Center Ltd. Partnership*, 192 B.R. 648, 660 (Bankr. E.D.Pa. 1996); *In re Dan-Ver Enterprises, Inc.*, 86 B.R. 443, 447 (Bankr. W.D.Pa. 1988).

In this case, PNC chose the wording of the Subordination Agreement. I find the language of the agreement to be plain and unambiguous. I conclude that the agreement evidenced a specific intention to subordinate only the lien of the loan in the amount of $31,750.00 to the lien of the mortgage in the face amount of $225,050.00. There is no mention, much less subordinations, of the $175,000.00 or $63,950.00 Mortgages. I also conclude that the Subordination Agreement lends no support to PNC's argument that the $225,050.00 Mortgage should be held to be a first lien position as to the Real Estate. I find that the effect of the Subordination Agreement was only to subordinate the lien of the $31,750.00 Mortgage to the lien of the $225,050.00 Mortgage. The agreement changed the lien position of the $225,050.00 Mortgage only vis-a-vis the $31,750.00 Mortgage.

8

### D. PNC's "Counterclaim"

Again, PNC's Answer to the Complaint included a claim for relief which it has denominated as a counterclaim in this Adversary Proceeding. The "counterclaim" does not seek the award of monetary relief but is more in the nature of affirmative defenses. I have already addressed PNC's contention that the doctrine of equitable subrogation should place the $225,050.00 Mortgage in a first lien position.

PNC also has characterized this Adversary Proceeding as an equitable action and has alleged certain misconduct by the Debtor. It argues that under the equitable maxim "he who seeks equity must do equity," the Debtor is barred from maintaining this action.

PNC maintains that the Debtor was employed by its predecessor, National City Mortgage, in several capacities, including a post-closing auditor, loan closer, and loan officer. Defendant's Counterstatement of Disputed Material Facts, ¶50, September 19, 2014, ECF No. 35-2. PNC also maintains that the Debtor misrepresented his income when he applied for the $225,050.00 Mortgage. *Id.* at ¶13.d.

Central to PNC's equitable defenses, such as the "unclean hands doctrine," is the assumption that this Adversary Proceeding is a claim in equity. Defendant's Opposition to Plaintiff's Motion for Summary Judgment, 4-5, September 19, 2014, ECF No. 35.

This presents the question of whether a declaratory judgment action is necessarily a claim for equitable relief. The law requires that the essential character of a declaratory judgment action be examined. A declaratory judgment action seeking specific performance, or injunctive relief, is clearly equitable in nature. A declaratory judgment action seeking damages, or another legal remedy, is a legal claim entitling the plaintiff to a jury trial. *AstenJohnson, Inc. v.*

9

*Columbia Cas. Co.*, 562 F.3d 213, 224-26 (3d Cir. 2009).

The Third Circuit also reminds us that the declaratory judgment remedy, ". . . may be granted upon either legal or equitable claims and is Sui generis." *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185, 1189 (3d Cir. 1979). Sui generis generally denotes a matter which is unique or of its own kind or class. Black's Law Dictionary 1662 (10th ed. 2014).

In this case, the Debtor, who would have been the defendant in a state court mortgage foreclosure proceeding, seeks a determination of the Mortgages' priorities. I find that this type of claim is essentially an inverted lawsuit and not a traditional equitable claim. *Owens-Illinois*, 610 F.2d at 1189; *In re Matthews*, 203 B.R. 152, 159 (Bankr. D.Minn. 1996). I do not agree with PNC's contention that this Adversary Proceeding seeks equitable relief.

I find that the Debtor is asserting a legal claim, not an equitable claim. Therefore, I conclude that PNC's argument that equitable maxims defeat the Debtor's claims is misplaced. Even viewing the alleged facts in the light most favorable to PNC, I conclude that the allegations against the Debtor are of no avail in this matter. Nothing I say here should be implied to countenance the misconduct alleged against the Debtor. Proof of such allegations could resound more loudly in an adversary proceeding brought by PNC seeking non-dischargeability of any of its loan obligations pursuant to § 523(a). However, this is not such a proceeding and I take judicial notice that the deadline for filing non-dischargeability complaints in this matter ran on March 25, 2013. Fed. R. Bankr. P. 4007(c).

IV. Conclusion

In sum, there is no basis to reorder the priorities among the Mortgages; beyond the

10

narrow confines of the Subordination Agreement. I conclude that there is no material issue of outstanding fact and that the Debtor is entitled to judgment as a matter of law. I will grant summary judgment to the Debtor declaring that the mortgage loan in the face amount of $175,000.00, which the record demonstrates was recorded on September 30, 2005, is in a first lien position against the Real Estate. I also find that the mortgage loan in the face amount of $31,750.00 is subordinate to the $225,050.00 Mortgage. I make no finding as to the relative priorities between the mortgage loans in the face amount of $63,950.00 and $225,050.00. Both of the mortgage loans are dated April 13, 2006, and I cannot discern from the record the recording date or dates of those two loans.

    I will also grant summary judgment in favor of the Debtor, Plaintiff/Counterclaim Defendant and against PNC, Defendant/Counterclaim Plaintiff, on the counterclaim included in PNC's Answer.

By the Court,

*Robt. N. Opel II*
_____
Robert N. Opel, II, Bankruptcy Judge
(BI)

Date: March 3, 2015